IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| LARRY MERRELL | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:12CV393 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

On June 20, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

**I.  HISTORY**

On March 3, 2009, Plaintiff protectively filed a Title II application for a period of disability and Disability Insurance Benefits. *See* Transcript ("Tr.") at 25 (Administrative Law Judge ("ALJ") decision). In his application, he alleged disability beginning July 1, 2001. *Id*. This claim was denied initially on March 25, 2009. *Id*. The claim was denied on reconsideration on June 18, 2009. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on May 13, 2010. *Id*. at 25, 36-47 (transcript of administrative hearing). Plaintiff appeared and testified, represented by counsel. *Id*. A vocational expert, Dr. Dillon Snowden, appeared but did not testify during the hearing. *Id*.

The ALJ issued an unfavorable decision on May 27, 2010, *id*. at 28, finding that, through Plaintiff's date last insured (March 31, 2002), there were no medical signs or laboratory findings to

substantiate the existence of a medically determinable impairment. *See* Tr. at 28. .Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. *See* Tr. at 29.

At the request of Plaintiff, the Appeals Council (AC) reviewed the ALJ's decision in conjunction with the entire record. On January 23, 2012, the AC notified Plaintiff that it had granted Plaintiff's request for review. *See* Tr. at 18, 103. On April 20, 2012, the AC issued a decision finding that, while the AC agreed with the ALJ's findings under Step One of the sequential evaluation, that Plaintiff had not engaged in substantial gainful activity since July 1, 2001, it did not agree with the ALJ's finding that Plaintiff did not have a medically determinable impairment prior to March 31, 2002. *See* Tr. at 4, 6. The AC found that Plaintiff's post-traumatic stress disorder (PTSD) is a medically determinable impairment but that there is no evidence that the impairment significantly limited his ability to do basic work activity. *See* Tr. at 4-5, 6.

In its decision, the AC found that although Plaintiff's PTSD qualified as a medically determinable impairment during the relevant time period, *i.e.*, from Plaintiff's alleged disability onset date of July 1, 2001, through March 31, 2002, Plaintiff failed to show that his PTSD qualified as a severe impairment prior to March 31, 2002. *See* Tr. at 4-6. The AC specifically discussed relevant medical evidence, but found that the record did not contain any medical evidence dated during the relevant time period. The AC found that the evidence indicated that Plaintiff did not seek treatment for his allegedly disabling PTSD until approximately 2004. *See* Tr. at 4-6.

Accordingly, the AC denied Plaintiff's application. *See* Tr. at. 6. Therefore, the AC's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435; *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age,

3

education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments

that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

The procedure for evaluating a mental impairment is set forth in 20 C.F.R. § 404.1520a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. *Id.*, § 404.1520a(c)(2-4).

Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id.*, § 404.1520a(d). If the ALJ's assessment is "none" or "mild" in the first three categories above, and is "none" in the fourth category, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's]

5

ability to do basic work activities." *Id.*, § 404.1520a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. *Id.*, § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]." *Id.*, §§ 404. 1520a (d)(3), (e)(2).

### III. THE APPEALS COUNCIL'S FINDINGS

The AC made the following findings in its April 20, 2012, decision:

The claimant has not engaged in substantial gainful activity since July 1, 2001, the alleged onset date (20 C.F.R. §§ 404.151 ).

The claimant's post-traumatic stress disorder (PTSD) is a medically determinable impairment. However, prior to March 31, 2002, the Council finds that the claimant's PTSD was not severe as there is no evidence this impairment significantly limited his ability to do basic work activities (20 C.F.R. §§ 404.1521 (a)).

For the period beginning July 1, 2001, the alleged onset date, through March 31, 2002, the date the claimant last met our disability insurance requirements, the claimant had the medically determinable impairment of post-traumatic stress disorder. However, prior to March 31, 2002, the claimant's post-traumatic stress disorder was not severe as there is no evidence this impairment significantly limited his abilities to do basic work activities, and he was, therefore, not disabled. (20 C.F.R. §§ 404.1520(c) and 404.1521(a)). *See* Tr.at 4-6.

The AC determined that Plaintiff was not disabled under sections 216(i) and 223 (period of disability and disability insurance benefits) of the Social Security Act. *See* Tr. at 6. In its decision, the AC found that although Plaintiff's PTSD qualified as a medically determinable impairment during the relevant time period, *i.e.*, from Plaintiff's alleged disability onset date of July 1, 2001, through March 31, 2002, Plaintiff failed to show that his PTSD qualified as a severe impairment prior to March 31, 2002. *See* Tr. at 4-6. The AC specifically discussed relevant medical evidence, but found that the record did not contain any medical evidence dated during the relevant time period, and instead the

evidence indicated that Plaintiff did not seek treatment for his allegedly disabling PTSD until approximately 2004. *See* Tr.at 4-6. Accordingly, the AC denied Plaintiff's application. *See* Tr.at 6.

IV. **DISCUSSION AND ANALYSIS**

Plaintiff asserts he cannot work because he suffers from medically determinable, severe mental impairments of PTSD relating to his military service with the United States Marine Corps in Vietnam in the 1960s. *See* Tr. at 41-44, 45, 120, 123, 130, 132, 213, 214, 239, 242, 254, 388, 425, 437, 589-607, 817-830, 960. Plaintiff served in heavy combat situations in Vietnam. *See* Tr. at 38. Plaintiff testified that he tried working full time as a house painter following his military service, but his mental health became an issue. He testified that his mental health deteriorated. Plaintiff testified he could not deal well with people in a public situations and his partner ended up running the business. *See* Tr. at 41. Plaintiff further testified that he worked, but could only work two to three hours a day. *See* Tr. at 41. Plaintiff would stop working when he felt as if he could not deal with people anymore. Plaintiff frequently failed to show up for work, which resulted in problems with his customers. *See* Tr. at 41-44.

Plaintiff, at the suggestion of a friend, went to the VA to be tested for PTSD. *See* Tr. 41, 42, 44, 45. A February 23, 2012, report by Plaintiff's treating psychiatrist, Dr. Rogers, stated that he has been treating Plaintiff since 2004 for PTSD. Dr. Rogers also stated that the PTSD began following Plaintiff's tour as a U.S. Marine in Vietnam in the 1960's. *See* Tr. at 960. The VA considers Plaintiff 100% disabled on the basis of his post-traumatic stress disorder, and also on the basis of his other conditions such as edema, cirrhosis, and Hepatitis C. *See* Tr. at 38.

During his initial application for Social Security Disability, the intake officer at the Social Security office observed that the Plaintiff appeared very disorganized, that he shuffled through his

papers, and that he would not answer any questions without checking his paperwork. *See* Tr. at 120. Plaintiff stated in his Reports that he has PTSD, depression, anxiety, irritability, and suffers flashbacks. *See* Tr. at 123, 132. Plaintiff further reported difficulty keeping a job due to his mental issues, which manifest in an inability to be around people and a threatening demeanor. *See* Tr. at 123, 130.

Plaintiff states that the issues presented are "Whether the AC erred in failing to apply the correct severity standard and determining that Plaintiff did not suffer from a severe mental impairment." *See* Plaintiff's Brief at 2. Throughout the discussion of the brief, Plaintiff asserts the following issues: (1) the AC did not apply the proper Step Two standard, and thereby erred when it did not find that Plaintiff had a severe impairment of PTSD; (2) the AC improperly failed to obtain a consultative examination; (3) the AC failed to find Plaintiff met Listing 12.06; and (4) the AC did not properly employ the "special technique" when it evaluated Plaintiff's PTSD. *See* Plaintiff's Brief at 1-11.

**The AC's Application of *Stone v. Heckler***

Plaintiff contends that the AC applied the incorrect legal standard by failing to apply the severity standard of *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985), in evaluating his claim of PSTD and in determining that his impairments were not severe. The Fifth Circuit's standard in determining whether a claimant's impairment is "severe" at Step Two of the sequential evaluation is *de minimus*: An impairment can be considered as not severe only if it is a slight abnormality (having) such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. While the AC states that the ALJ's hearing decision notes consistency with *Stone*, and that it has also applied that regulatory standard, it states that Plaintiff's "PTSD was not severe as there is no evidence this impairment significantly limited his ability to do basic work activities." *See* Tr. at 4-6. The Plaintiff contends that this standard is not

8

equivalent to the *Stone* and does not represent the correct Fifth Circuit interpretation of the severity standard. *See* Plaintiff's Brief at 4. *Stone* holds that an impairment may be found not severe "only if it is a slight abnormality having such minimal effect on the individual that it ***would not be expected to interfere*** with the individual's ability to work." *Stone,* 752 F.2d at 1101(emphasis added).

At Step Two, the burden of proof rests upon Plaintiff to show he has a medically determinable impairment that qualifies as a severe impairment. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); 20 C.F.R. § 404.1512(a). An impairment is considered not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *See* Tr .at 5 (citing *Stone*, 752 F.2d at 1101); Social Security Ruling (SSR) 85-28; and 20 C.F.R. § 404.1521(a))).

The Fifth Circuit stated in *Stone* that it would assume that the ALJ had applied an incorrect standard to the severity requirement unless the correct standard was either set forth by reference to *Stone* or expressly stated in the decision. 752 F.2d at 1106. The Fifth Circuit stated that, "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id*. On the other hand, procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).

After reviewing the evidence, the relevant regulations, and the SSRs, the AC articulated its findings at Step Two, and determined, *inter alia*, that because there was no evidence dated on or before March 31, 2002, the date Plaintiff's disability insurance expired, Plaintiff failed his burden to show that his medically determinable impairment of PTSD qualified as severe. *See* Tr. at 4-6.

Although Plaintiff argues that the AC did not base its Step Two finding on the correct severity standard, the AC's decision demonstrates that it cited to the proper regulations, SSR, and the Fifth

Circuit's severity standard. *See* Tr. at 5-6 (citing SSR 85-28; 20 C.F.R. § 404.1521; and *Stone*, 752 F.2d at 1099)). *See* Plaintiff's Brief at 3-6. A reviewing court will remand a case decided at Step Two unless the decision expressly cites either to the "slight abnormality" standard or to *Stone*. *See Stone*, 752 F.2d at 1105; *see also Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (where ALJ failed to refer to *Stone*, failed to set for the *Stone* standard, or otherwise state he used the *Stone* construction, then must Court remand case). Here, the AC expressly cited to *Stone* as well as SSR 85-28 which discusses the *Stone* standard. *See* Tr. at 5.

Although Plaintiff argues that this Court should adopt the Northern District of Texas's review of the Step Two standard, whereby a decision that contains an "express recitation" of the 20 C.F.R. § 404.1521 standard "creates an ambiguity" as found in *Craaybeek v. Astrue*, 2011 WL 539132, *6 (N.D. Tex. Feb. 7, 2012), the Fifth Circuit has held that the court must remand "only where there is *no indication* the [final decision] applied the correct standard." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) (emphasis added) (remand proper where ALJ failed to cite to *Stone*); *see* Plaintiff's Brief at 5-6; *see also Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008) (ALJ errs when his decision contains no reference whatsoever to *Stone*).

Because the AC specifically cited to *Stone*, and based it determination on the standard set forth therein, Plaintiff's argument that the AC used an improper legal standard to evaluate the severity of Plaintiff's PTSD fails. *See* Plaintiff's Brief at 5-6. Based on the evidence in the record, the Court concludes that substantial evidence supports the AC's determination that Plaintiff's PTSD did not constitute a severe impairment.

**The AC's Finding that Plaintiff's Impairments Are Not Severe**

Plaintiff argues that the evidence "fails to support a finding that Plaintiff's impairments are "not severe," even under the actual *Stone* standard of severity. *See* Plaintiff's Brief at 6. Plaintiff points to evidence in the record supporting his claim of medically determinable, severe mental impairments of PTSD. *See* Tr. at 41-44, 45, 120, 123, 130, 132, 213, 214, 239, 242, 254, 388, 425, 437, 589-607, 817-830, 960. Plaintiff testified that he could not deal well with people, resulting in his partner taking over his business partner run the business. *See* Tr. at 41. Plaintiff further testified last he worked painting houses he would only work two to three hours a day and would quit when he could not deal with people anymore, often he would not show up for work, about two weeks out of the month and this caused problems with his customers. *See* Tr. at 41-44. In January 2010, VA psychiatrist Dr. Shakil indicated that Plaintiff has a hundred percent service connected VA disability for his PTSD and that Plaintiff suffers from "chronic anxiety, irritability, anger, frustration, combat-related flashbacks/nightmares, and sleep disturbances." *See* Tr. at 915. Dr. Shakil further opined that Plaintiff is disabled and unable to work due to his severe psychiatric problems. *See* Tr. at 915.

Although Plaintiff suggests that, because the VA awarded him a disability rating for his PTSD, the Commissioner should also find him disabled, the VA's findings fail to support his contention that he was disabled prior to March 31, 2002. *See* Plaintiff's Brief at 7 (citing to Tr. at 915, noting a 100 percent VA disability rating in 2009). In July 8, 2004, over two years after the date on which Plaintiff must show that he had a severe impairment such that he would be disabled under the Act, the VA confirmed that Plaintiff had no "rated disabilities" *See* Tr. at 237.

The Commissioner must make a disability determination based on Social Security law. *See* 20 C.F.R. § 404.1504. As a result, the VA's decision that a claimant is disabled is not legally binding on the Commissioner *See* Tr. at. 23. *See Loza*, 219 F.3d at 395; 20 C.F.R. § 404.1504 ("A determination

11

made by another agency that you are disabled or blind is not binding on us"). Thus, any rating of disability by the VA, especially a rating made years after the date Plaintiff must show disability under Title II of the Act, fails to support Plaintiff's argument.

The AC properly determined that the evidence did not show any significant objective findings to substantiate a determination of PTSD as a severe impairment prior to March 31, 2002. *See* Tr. at 4-6; *see also* 20 C.F.R. § 404.1529 (Commissioner makes finding of medically determinable impairment that could reasonably produce symptoms alleged by Plaintiff). In his medical documents, Plaintiff alleged that he experienced PTSD beginning when he returned from duty from Vietnam. On July 8, 2004, however, he stated to Heidi S. Vermette, M.D., that he had "never sought psychiatric treatment" or taken any medication for his PTSD prior to this first mental health visit to the VA. *See* Tr. at 5, 237-238, 784, 787-788.

It is significant to note that, although Plaintiff cites to numerous subjective statements wherein he alleged he was completely disabled due to PTSD, he points to no objective finding or any treatment prior to March 31, 2002 in support of this argument. *See* Plaintiff's Brief at 6-7; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (subjective complaints must be corroborated, at least in part, by objective evidence). Thus, Plaintiff has failed to show that he had severe PTSD prior to March 31, 2002, and instead substantial evidence supports the AC's decision.

The record evidence dated after March 31, 2002, provides further evidence in support of the AC's determination that Plaintiff's PTSD did not qualify as severe prior to this date. Although the AC recognized that the administrative record showed a diagnosis of bipolar disorder in 2004, *see* Tr. at 5, 239, a mere diagnosis of an impairment does not merit a decision of disability. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The AC noted that despite Plaintiff's allegations of

complete disability from PTSD, Plaintiff continued to work either full-time, or at least part-time, until approximately 2005. *See* Tr. at 5, 41, 225 (noting Plaintiff worked as a "painting contractor" in 2003). *See Fraga*, 810 F.2d at 1305 & n. 11 (ability to work despite pre-existing condition supports ALJ's finding of not disabled).

Further, the AC noted that record evidence indicates that Plaintiff reported no difficulty with PTSD or related symptoms even after March 31, 2002. *See* Tr. at 5. On March 10, 2003, Plaintiff visited the VA emergency room for upper abdominal pain and back cramps, but stated to the medical personnel that he took no prescription medication. *See* Tr. at 224. After an examination, Oren Zebaida, M.D., described Plaintiff as in "good health". *See* Tr. at 225. On his next visit on June 30, 2003, when asked about related symptoms during a depression screen, Plaintiff denied any loss of interest in pleasurable things or feelings of sadness and hopelessness. *See* Tr. at 227. His only complaint during that visit was of "poor sexual function" but nothing relating to his mental issues. *See* Tr. at 228. On May 3, 2004, during a follow-up visit to the VA, Plaintiff stated he had a history of untreated PTSD. *See* Tr. at 234. Plaintiff also stated, however, that he had "[n]o problems with anger," and did not allege any difficulties due to PTSD. *See* Tr.at 234. These records and statements support the AC's determination that Plaintiff did not have severe PTSD prior to March 31, 2002.

The AC, therefore, properly evaluated Plaintiff's impairment, and properly determined that his PTSD did not qualify as severe prior to the expiration of his disability insurance on March 31, 2002. *See* Tr. at 4-; *see* also Plaintiff's Brief at 4-9.

**Failure to Order a Consultative Exam**

Plaintiff alleges that the Court must remand this matter to the AC in order for Plaintiff to undergo a consultative examination. *See* Plaintiff's Brief at 10. The Commissioner may order a

consultative examination when the Commissioner is unable to seek clarification from the treating source or where the information needed to make a determination is not readily available from the medical records previously obtained from the treating source. *See* 20 C.F.R. § 404.1512(e).

In this case, there are no records from the relevant time period to clarify. Plaintiff's treating physician, William B. Rogers, admitted he only began treating Plaintiff in 2004. *See* Tr. at 5-6, 960. More than ten years have passed since Plaintiff last met the disability insurance status; therefore, a consultative examination would not provide relevant information about Plaintiff's mental status prior to March 31, 2002. *See* 20 C.F.R. § 404.1519b(c) (agency will not order a consultative examination after expiration of date last insured). Thus, this argument is without merit.

**The AC's Finding that Plaintiff Did Not Meet Listing 12.06**

Plaintiff also alleges that had the AC ordered a consultative examination, the AC would have found that Plaintiff's PTSD "meets Listing 12.06." *See* Plaintiff's Brief at 8. As acknowledged by Plaintiff, the determination of whether a claimant is found disabled *per se* due to his impairment is made at the third step of the sequential evaluation process, and the burden remains on Plaintiff to prove that he satisfies a listed impairment. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Here, because the AC found that Plaintiff failed his Step Two burden, the AC did not proceed to the third step.

Further, Plaintiff does not allege which specific elements of Listing 12.06 he met. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (individual's duty to show that he manifests all of a Listing's criteria); *See* Plaintiff's Brief at 8. Without any additional support or argument of this claim of error, this claim has not been adequately preserved. *See Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (issue

waived due to inadequate briefing). The Plaintiff has failed to show that the AC erred by not considering whether Plaintiff met Listing 12.06.

### The AC's Use of the "Special Technique" When It Evaluated Plaintiff's PTSD

The Plaintiff contends that the AC's assessment of Plaintiff's mental impairment is also erroneous because the AC fails to evaluate the impairments as required by the regulations. *See* Plaintiff's Brief at 8. Specifically, the regulations explain that, when, as here, there is evidence of a mental impairment that allegedly prevents a claimant from working, the AC must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a. The regulations contain a five-point scale to rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence and pace), as none, mild, moderate, marked or extreme. The regulations further provide a four point scale to rate the degree of limitation in the fourth functional area (episodes of decompensation), which is rated as none, one or two, three, four or more. 20 C.F.R. § 404.1520a. The AC is required to "document application of the technique in the decision." See 20 C.F.R. 404.1520a(e)(2). The regulations now provide:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

As stated earlier, the medical evidence of the record notes severe PTSD with significant limitations. *See* Plaintiff's Brief p. 7-8. The Plaintiff claims that, by failing to evaluate Plaintiff's mental impairment as required by the regulations, the AC is preventing the Court from being able to determine whether the AC's decision regarding Plaintiff's mental impairments is supported by

substantial evidence and whether the correct legal standard was used. *Biles v. Astrue*, No. 3:09-CV-318-B (BF), 2010 WL 4688810, *9 (N.D. Tex. Oct. 28, 2010) (citing *Satterwhite v. Barnhart,* 44 F. App'x 652, 2002 WL 1396957, *1-2 (5th Cir. Jun. 6,2002) (where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the psychiatric review technique and make the required findings constitutes legal error and requires remand); *Morris v. Barnhart,* No. SA-05-CA1019-XR/NN, 2007 WL 496851, *4-5 (W.D. Tex. Feb. 7, 2007); *see also Kohler v. Astrue,* 546 F.3d 260, 266-67 (2d Cir. 2008) (remand required where ALJ failed to evaluate the four functional areas and did not record specific findings in his decision); *Moore v. Barnhart,* 405 F.3d 1208, 1214 (11th Cir. 2005) (remand required where the ALJ's decision lacks consideration of the factors and their impact on the claimant's RFC); *Gutierrez v. Apfel,* 199 F.3d, 1048, 1051 (9th Cir. 2000) (failure to follow § 404.1520a requires remand where there is a colorable claim of mental impairment)); *Skidis v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2181-N (BH), 2009 WL 3199234 (N. D. Tex. Oct. 2, 2009).

The regulations identify four broad categories used to evaluate mental impairments at Steps Two and Three of the sequential process: (i) social functioning, (ii) activities of daily living, (iii) concentration, persistence, and pace, and (iv) episodes of decompensation. *See* 20 C.F.R.§ 404.1520a(c)(3); *see also* SSR 96-8, 1996 WL 374184 at *4 (rating these four categories is commonly known as the PRTF (psychiatric review technique form) or "the technique").

During the administrative process on March 23, 2009, state agency physician John Ferguson, Ph.D., completed a PRTF, but noted that during the relevant time period, July 1, 2001, through March 31, 2002, there was "insufficient evidence" in the record with which to rate Plaintiff in any of the four areas. *See* Tr. at 751, 761. Dr. Ferguson specifically noted that the evidence of record "indicates[Plaintiff] sought no [treatment] at the VAMC prior to 2004" and that there was otherwise

16

no record evidence dated prior to Plaintiff's date last insured of March 31, 2002. *See* Tr. at 763. The AC found that the record contained no evidence dated on or prior to March 31, 2002, and that instead, evidence in 2003 and 2004 showed Plaintiff at these later dates had no complaints of mental functional limitations or requests for treatment *See* Tr. at 4-6. Thus, Plaintiff has failed to show that, had the AC expressly performed the technique, it would have found any limitations during the relevant time period such that it would have determined Plaintiff had severe PTSD prior to March 31, 2002. Because the AC properly found there were no "symptoms, signs, [or] laboratory findings that substantiate the presence of" PTSD prior to March 31, 2002, because there were no records dated prior to that date, the AC essentially concluded that there was insufficient evidence to find any functional limitations in any of the categories *See* Tr. at 5-6; *see also* 20 C.F.R. § 404.1520a(b) ("we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section [documenting application of the technique]"). This argument, therefore, fails. The AC properly evaluated Plaintiff's impairment, and properly determined that his PTSD did not qualify as severe prior to the expiration of his disability insurance on March 31, 2002. *See* Tr. at 4-6.

It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 1st day of October, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE